Filed 2/23/15  (unmodified opn. attached)

# CERTIFIED FOR PUBLICATION

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## THIRD APPELLATE DISTRICT

### (Shasta)

----

| | |
|---|---|
| THE PEOPLE, | C074342 |
| Plaintiff and Respondent, | (Super. Ct. No. 08F06372) |
| v. | ORDER MODIFYING OPINION |
| LEON WILSON CROCKETT, | [NO CHANGE IN JUDGMENT] |
| Defendant and Appellant. | |

THE COURT:

It is ordered that the opinion certified for publication and filed herein on February 19, 2015, be modified as follows.

At page 21, delete the text of footnote 14, which reads:

> **14** We have recently reached the same conclusion in the published portion of *People v. Chaney* (2014) 231 Cal.App.4th 1391, 1397-1398 (petn. for review filed Jan. 8, 2015, S223676), a case not yet final.  The People have urged that we follow its reasoning.

1

and replace it with the following:

> [14] The issue is now pending in the Supreme Court. (*People v. Chaney* (2014) 231 Cal.App.4th 1391, review granted Feb. 18, 2015, S223676.)

There is no change in the judgment. (***CERTIFIED FOR PUBLICATION***)

BY THE COURT:

      HULL      , Acting P. J.

      BUTZ      , J.

<u>**CERTIFIED**</u> <u>**FOR**</u> <u>**PUBLICATION**</u>

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## THIRD APPELLATE DISTRICT

### (Shasta)

----

| | |
|---|---|
| THE PEOPLE, | C074342 |
| Plaintiff and Respondent, | (Super. Ct. No. 08F06372) |
| v. | |
| LEON WILSON CROCKETT, | |
| Defendant and Appellant. | |

APPEAL from order denying resentencing of the Superior Court of Shasta County, Stephen H. Baker, Judge.  Affirmed.

Susan K. Shaler, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Michael P. Farrell, Assistant Attorney General, Catherine Chatman and Michael Dolida, Deputy Attorneys General, for Plaintiff and Respondent.

In January 2013, defendant Leon Wilson Crockett filed a petition pursuant to Penal Code section 1170.126[1]to recall his indeterminate life sentence.  The statute,

---

[1]  Undesignated statutory references are to the Penal Code.

enacted as part of a November 2012 initiative measure, provides retrospective relief under narrow criteria from indeterminate life sentences imposed for recidivism. He alleged that he was eligible for resentencing because his February 2009 commitment convictions—corporal injury to a cohabitant, false imprisonment by means of force or violence (as a lesser offense of kidnapping), and assault with force likely to cause great bodily injury—were not "serious" or violent felonies (*id.*, subd. (e)(1)), and neither his commitment convictions nor his other prior felony convictions came within any other disqualifying criteria (*id.*, subd. (e)(2) & (3)). He asserted that the trial court as a result should resentence him to a determinate sentence of double the term otherwise applicable to his convictions (i.e., the same sentence defendant would receive under the prospective amendments to the recidivist sentencing statutes enacted as part of the same initiative). (*Id.*, subd. (f); see § 667, subd. (e)(1).)[2]

The original sentencing judge presided over the matter. (§ 1170.126, subd. (b).) The court appointed counsel and invited opposition from the prosecutor. The prosecutor "determined that the defendant is eligible for recall of sentence . . . and will therefore not object to the Court considering . . . re-sentencing." However, the prosecutor contended defendant presented an unreasonable risk of danger to the safety of the public and asked that he not be resentenced. (*Id.*, subds. (f) & (g).) After considering the materials that the parties submitted and hearing testimony from defendant, the trial court exercised its

---

[2] As defendant has pursued relief from a final conviction pursuant to section 1170.126, we do not need to address the contretemps regarding whether a defendant whose sentence is not yet final on appeal is entitled to application of the prospective amendments without filing a petition for recall pursuant to section 1170.126. (*People v. Yearwood* (2013) 213 Cal.App.4th 161, 168 (*Yearwood*) [not retroactive].) The issue is presently pending in the Supreme Court. (See, e.g., *People v. Conley* (2013) 215 Cal.App.4th 1482, review granted Aug. 14, 2013, S211275, case fully briefed May 7, 2014.)

discretion to deny the petition on the ground that defendant posed an unreasonable risk of danger to public safety. Defendant appealed.[3]

On appeal, the People now seek to raise the threshold question of whether in fact defendant is eligible for resentencing. We requested supplemental briefing from the People to explain *why* this issue should be cognizable in the first instance on appeal after they conceded defendant was eligible in the trial court (an analysis that was omitted from their brief). Procedurally, defendant argues he was entitled to have a jury determine the issue of unreasonable danger beyond a reasonable doubt, or have the court determine the issue either by that standard or by clear and convincing evidence. He also argues that whatever the burden of proof, the prosecution did not satisfy it. We shall affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

The record before the trial court was extremely limited. The pro se recall petition included only the abstract of judgment for defendant's commitment convictions. In opposition, the prosecutor included the probation report from the underlying trial (for purposes of establishing defendant's criminal history) and materials from prison officials regarding defendant's postcommitment conduct in prison. (§ 1170.126, subd. (g) [in addition to the criminal record, trial court can consider defendant's record of discipline and efforts at rehabilitation while incarcerated, or other evidence it determines to be relevant in making determination that defendant represents unreasonable risk of danger].) In response to the prosecution's submittal, defendant provided additional materials relating to his postcommitment conduct.

---

[3] The Supreme Court has recently determined that a finding of ineligibility is appealable as an order after judgment affecting a defendant's substantial rights. (*Teal v. Superior Court* (2014) 60 Cal.4th 595, 597.) Certainly, the denial of an *eligible* defendant's petition for resentencing must at least equally affect substantial rights.

The prosecution's tactical choice not to contest defendant's eligibility makes us question whether the additional materials to which the parties refer on appeal played any part in the trial court's ruling (or indeed were even part of the trial record on the petition). Our opinion affirming defendant's commitment offenses (*People v. Crockett* (C061217, May 6, 2010) [nonpub. opn.]) appears in the record as an attachment to the remittitur for the prior appeal filed in the trial court, but neither the parties nor the trial court made reference to it in the petition proceedings. We have granted defendant's motion to incorporate the record in case No. C061217, but the record in the present case does not indicate affirmatively that at any point the parties submitted it to the trial court or that the trial court consulted it on its own motion (although, as noted, the trial judge had also presided over defendant's trial and presumably had some independent memory of it, which would be the apparent rationale for the statutory mandate to assign the petition to the sentencing court). We thus confine ourselves for the moment to the facts involving defendant's criminal history and postconviction behavior, and then return to these other materials in our discussion of eligibility.

As defendant admitted in his testimony at the recall petition hearing, his commitment convictions involved "violence against a woman and a young teenage boy [who] tried to intervene and help her."[4] The trial court had sentenced defendant to indeterminate prison terms of 25 years to life on all three commitment convictions. It stayed execution of sentence (§ 654) on the convictions for false imprisonment and assault.

---

[4] These victims were defendant's girlfriend of several months and the 14-year-old teenage son of their hosts. With respect to the latter, the jury had deadlocked on a charge of inflicting corporal injury on a child; the court granted the motion of the prosecution to dismiss the charge in the interests of justice.

4

As summarized in the probation report in case No. C061217 (and as defendant acknowledged at the petition hearing), his criminal history began as a juvenile in 1975 when he was 16. Between 1975 and 1977, he received stolen property, brandished a weapon, disturbed wildlife, committed burglary, and committed an assault (along with a battery and the obstruction of a peace officer) that resulted in his placement with the former California Youth Authority (CYA). The CYA discharged him from parole in 1978.

From 1981 to 1988, defendant committed over a dozen offenses resulting in either jail time or placement on a work program. These included convictions for being an accessory, counterfeiting, battery, employee embezzlement, burglary, hit-and-run, provoking a fight and possessing marijuana, possessing a prohibited weapon, and four separate instances of driving under the influence (one of which included obstructing a peace officer and another of which somehow also resulted in a conviction for recidivist petty theft).

In 1988, defendant was placed on probation for assault with a firearm and shooting at an occupied dwelling (the first two convictions qualifying him for his indeterminate life term); within a year, he had violated probation (driving while under the influence) and was sentenced in September 1989 to prison for three years. After release on parole in September 1990, he committed grand theft from the person in December 1990 (violating parole) and was also sentenced to prison for the theft in March 1991 for 16 months. In both March 1992 and January 1993, he violated parole within months after release and returned to custody. As a result of the January 1993 violation, he was sentenced in April 1993 to prison for six years for robbery involving the personal use of a knife (his third qualifying conviction). Paroled in March 1996, he once again returned to custody by the end of the year for an unspecified violation. He was found guilty in September 1997 of conspiring to commit burglary at some unspecified point in 1996 and was sentenced to

5

eight years in prison. He was not again paroled until 2004. At that point, he incurred four unspecified violations of parole (and a May 2005 jail term for misdemeanor trespass) between 2004 and 2007, when he was discharged from parole in August. His commitment offenses occurred less than one year later.

On his commitment to prison, defendant received a Level 3 classification, one below the most serious level. By the time of the petition hearing, his good behavior had earned a reduction to Level 2, and he was eligible for double-cell or dorm housing without any restrictions. He had eschewed any involvement with prison gangs. Even though his term would last at least 25 years, he took advantage of educational and vocational programs. He went from being barely literate to earning A's and B's, and he earned certificates and commendations for completing the various courses. Recognizing that his commitment convictions were the result of his problems with alcohol, and that he had a life-long problem with addiction to both alcohol and marijuana, he successfully completed addiction treatment courses, and planned to rely on sobriety programs outside of prison to prevent a relapse. He had not incurred any violations for possession of controlled substances or homemade alcohol, and did not have any positive results in random substance testing. He had received citations for five minor rule violations since his commitment: two for going "out of bounds" to and from his classroom, one for insubordination in the law library, one for "horseplay" with a cellmate, and one for "unlawfully seeking a privilege" in the law library.

In its oral ruling on the recall petition, the trial court commended defendant on his postcommitment conduct in prison, and encouraged him to continue his efforts in preparation for his ultimate release. The trial court also noted defendant's supportive large family living in the county. However, it pointed out that it was also required to consider his criminal history, including the types of crimes. It thus found that on the totality of the circumstances, defendant represented an unreasonable risk of danger to the

6

public (citing, in particular, his abysmal failures on previous grants of probation and parole and his inability to refrain from reoffending for any appreciable length of time).

## DISCUSSION

### 1.0 Defendant Is Eligible for Resentencing

1.1 We Will Assume the Issue Is Cognizable on Appeal

As noted, the prosecution did not dispute defendant's eligibility for resentencing. On appeal, the People now assert defendant was in fact ineligible because (in their view) the record of conviction establishes that during the commission of his present offenses, he had the intent to inflict great bodily injury. (§§ 1170.126, subd. (e)(2) [cross-referencing § 667, subd. (e)(2)(C)(iii)].)

Although an issue not litigated in the trial court is generally forfeited on appeal, we have discretion to consider an issue in the first instance where it raises a question of law on such undisputed facts as appear in the record on appeal. (*Bialo v. Western Mutual Ins. Co.* (2002) 95 Cal.App.4th 68, 73; see 9 Witkin, Cal. Procedure (5th ed. 2008) Appeal, § 415, pp. 473-474.) This is a disfavored course of action; it is unjust to the opposing party, unfair to the trial court, and contrary to judicial economy (i.e., a waste of the time of the parties and the judicial branch) because it encourages the embedding of reversible error through silence in the trial court. (*Saville v. Sierra College* (2005) 133 Cal.App.4th 857, 873.) As a result, we ordinarily exercise our discretion to excuse forfeiture "rarely and only in cases presenting an important legal issue." (*In re S.B.* (2004) 32 Cal.4th 1287, 1293.) The circumstances of the present case hardly satisfy this stringent criterion.

Nevertheless, in the criminal context the doctrine of "unauthorized sentence" exists that countenances the People's belated change of strategy in this case. This exception to forfeiture exists where a trial court could not have lawfully imposed a sentence under any circumstance of the case before it, and the error does not involve a

7

mistake in procedure or in applying the facts in the record. (*People v. Johnwell* (2004) 121 Cal.App.4th 1267, 1283-1284 [may challenge prohibited striking of special circumstance initially on appeal]; accord, *People v. Scott* (1994) 9 Cal.4th 331, 354-355 [does not apply to challenge to defects in statement of reasons for sentence]; *People v. Brach* (2002) 95 Cal.App.4th 571, 578 [does not apply to challenge to condition of probation]; cf. *People v. Carranza* (1996) 51 Cal.App.4th 528, 532 [estoppel will also not apply if sentence unauthorized].) "In other words, obvious legal errors at sentencing that are correctable *without referring to factual findings in the record or remanding for further findings* are not [forfeitable]." (*People v. Smith* (2001) 24 Cal.4th 849, 852, italics added.) The rationale is that the trial court has acted in such circumstances beyond its sentencing power or in "excess" of its jurisdiction. (*Scott*, *supra*, 9 Cal.4th at p. 354 & fn. 17; *People v. Isenor* (1971) 17 Cal.App.3d 324, 336 [both cases describing how nature of an error under section 654 allows initial consideration on appeal].)

In their supplemental letter brief, the People invoke this exception, citing *Scott*, although they *still* fail to discuss *why* their resort to the record of conviction to prove the ineligibility of defendant is *not* a "fact-specific" issue based on the sentencing record (and thus allowing them to come within the exception). However, given our resolution on the merits of this claim, we will assume the determination of eligibility is akin to determining the applicability of section 654, in that it rests on the assessment of the *legal sufficiency* of the facts in the record to satisfy statutory criteria for eligibility (*People v. Oehmigen* (2014) 232 Cal.App.4th 1, 6-7, petn. for review filed Jan. 7, 2015, S223657), rather than errors of procedure or application of facts on the part of the trial court that would require a remand for redetermination.

1.2 Limitations on the Record on Appeal

The consequence (as we have stated) of raising the eligibility issue for the first time on appeal is the limiting of the People to undisputed facts in the record on appeal.

(Given that it was *defendant's* motion to incorporate the record from his appeal from his commitment offense, he has consented to our consideration of these materials that were not part of the record in the trial court.) In addition, as the proponents of this issue, the People have the burden to provide citations to the record in support of their argument; a failure to fulfill this duty forfeits our consideration of any additional facts that might be in the record. (*Estates of Collins & Flowers* (2012) 205 Cal.App.4th 1238, 1251, fn. 11.)

In their argument, the People simply assume they are citing to facts that are a proper part of the record of conviction without analysis. Rather than request yet another supplemental brief to have them address this issue, we will explain the proper criteria on our own.

*People v. Woodell* (1998) 17 Cal.4th 448 (*Woodell*) held that merely because *"some* opinions might not be probative on a given [factual] question is [not a] reason to exclude *all* opinions," particularly because a defendant is able to raise issues of material factual omissions or misstatements in an appellate opinion; therefore, an opinion on the appeal from the conviction is a *proper part* of the record of conviction, and such facts as it *does* include *can be* an accurate reflection of the trial record. (*Id.* at p. 457; cf. *People v. Garcia* (2002) 97 Cal.App.4th 847, 854-855 [use of memorandum decision to resolve appeal is not improper because defendant may petition for rehearing if facts inaccurate or insufficient]; Cal. Rules of Court, rule 8.500(c)(2) [failure to petition for rehearing on this basis generally forfeits factual challenges in petition to Supreme Court for review].) But *Woodell* also explains that "an appellate opinion might not supply all answers" because facts relating to the nature of the offense might not have been relevant to the issues before the court. (*Woodell*, at p. 457.) "[T]o what extent an opinion *is probative* in a specific case must be decided *on the facts of that case.*" (*Ibid.*, italics added.) Thus, in *People v. Elder* (2014) 227 Cal.App.4th 1308, 1316 (*Elder*), we held that it is proper generally to rely on an appellate opinion affirming the commitment offense as part of the record of

9

conviction in a petition pursuant to section 1170.126. Earlier cases have also found reporter's transcripts from the preliminary hearing and trial in a prior conviction to be a proper part of the record of conviction. (*People v. Bartow* (1996) 46 Cal.App.4th 1573, 1578-1580.)

1.3 Analysis: The Record Does Not Establish Ineligibility

In connection with their argument, the People quote only the sparse details that are included in the statement of facts in our opinion affirming defendant's convictions.[5] As is pertinent here, defendant and his girlfriend of several months had been drinking beer for several hours at the home of friends when defendant said that he wanted to leave. The girlfriend disagreed, and a verbal argument escalated into a physical argument. He forcibly dragged her (at various points) by her ankle, wrist, shorts, and hair from the house and toward his car. We did not mention the teenager except to say that he was unsuccessful in his efforts to pull defendant away from the girlfriend. A responding officer saw an abrasion on the back of her leg, about two inches in length, which he described as being pink to red in color with loose skin around its edges. At trial, the girlfriend asserted that she did not remember fighting with defendant or having any injury.

In citations to the trial transcript that *defendant* has provided, the girlfriend said she drank five or six 32-ounce (quart) bottles of beer over the course of the evening, during which she had a good time; she remembered someone playing cards, and then her next memory was of the next morning (at which point she noticed a large tear in the front

---

[5] To establish defendant's intent to inflict great bodily injury on the teenager during the commission of his offenses against the female victim, the People also cite to the probation report in case No. C061217. While it was presumably competent for the *prosecutor's* purpose of establishing defendant's *criminal history* (in the absence of objection from defendant), it is *not* part of the record of conviction that can establish the nature of defendant's commitment offense. (*People v. Trujillo* (2006) 40 Cal.4th 165, 179-180.)

of her shorts).  *Defendant* also provides citations to the trial transcript in which the teenager described his attempt to pull defendant away from the girlfriend.  While he was standing behind defendant, he grabbed at defendant's arms, then wrapped his arm around defendant's neck.  Defendant bit his arm in response, and the teenager released him.  It left a red mark that was not bleeding and did not need stitches; the mark lingered for a few days.  The teenager did not mention any resulting pain.  Defendant's citations do not include any evidence at trial of express intent on defendant's part to inflict great bodily injury, or any *other* evidence from which we might infer this intent beyond these facts that we have recited.  We will not search the trial record independently for further facts. (*Cristler v. Express Messenger Systems, Inc.* (2009) 171 Cal.App.4th 72, 89.)

The issues in the prior appeal included sufficiency of the evidence to establish the causation of corporal injury, the prosecutor's purported breach of professional ethics, the trial court's failure to allow defendant to address this breach at sentencing and present hand-copied letters purportedly from the girlfriend, the trial court's failure to investigate an asserted failing of former "conflict" counsel after defendant claimed he had smelled of alcohol in court, and whether the life sentence was unconstitutional.  Notably, the issue of *intent* to inflict great bodily injury was not among these issues; this is not surprising because it was not relevant to any offense or enhancement in defendant's trial.  As we noted in *People v. Guilford* (2014) 228 Cal.App.4th 651, 658, footnote 4 (*Guilford*), before the enactment of section 1170.126 an intent to inflict great bodily injury has been relevant (after 1993) only to a sentencing enhancement under section 12022.55.  We cannot presuppose that the parties would have paid close attention either to developing the record in the trial court or to the facts in our prior opinion on this issue.  Thus, we cannot rely on the principle that "[*t*]*he possibility of future consequences,* [*such as*] *the application of habitual offender statutes*, [would] further necessitate[] [that] the parties ensure the record accurately reflects the factual basis for [a guilty] plea.  Therefore . . . , a

11

defendant would *normally and reasonably* be expected to object to . . . the . . . factual recital if [it] did not accurately reflect the circumstances of the offense . . . ." (*People v. Sample* (2011) 200 Cal.App.4th 1253, 1265, italics added.) As a result, we do not find the prior opinion to be "highly probative" (*Woodell, supra*, 17 Cal.4th at p. 460) in light of the unlitigated status of intent in the trial or on appeal, unlike the facts establishing illegal possession of a weapon in the prior opinion in *Elder*, *supra*, 227 Cal.App.4th at page 1317, or the undisputed facts establishing the nature of the injuries and the defendant's history of domestic violence in the prior opinion in *Guilford*, *supra*, 228 Cal.App.4th at pages 661 to 662.

We are thus left only with facts establishing (at best) (1) the nature of the limited injuries to the victim and the teenager; (2) the jury's finding that the force applied to the victim was *likely* to result in great bodily injury (even if that was not the result); and (3) defendant's actions in the course of inflicting the injuries. We cannot say as a matter of law that the trial court, if it *had* been asked to review these equivocal facts from the record of conviction on the eligibility issue, would have come to the conclusion that this evidence is legally sufficient to establish that defendant intended to inflict great bodily injury.

It is necessary to show that defendant intended the resulting great bodily injury, not merely the act resulting in it. (Cf. *People v. Phillips* (1989) 208 Cal.App.3d 1120, 1123 [former § 12202.7 requiring *intent* to inflict great bodily injury].) While "the intent with which an act is done may be inferred from the circumstances attending the act" (*Phillips*, at p. 1124), we do not have here the use of a *deadly* weapon or the application of force *reasonably certain* to produce great bodily injury. (*Id.* at p. 1125, citing our decision in *People v. Superior Court* (*Duval*) (1988) 198 Cal.App.3d 1121, 1133-1134 [even though pregnancy is a great bodily injury, it is not so reasonably certain to result from a single act of intercourse that intent to inflict it can be presumed]; cf. *In re*

12

*Sergio R.* (1991) 228 Cal.App.3d 588, 601 [firing shotgun at close proximity is sufficient to presume intent to inflict great bodily injury for purposes of enhancement for firing weapon from car in § 12022.55].) Nor do we have resulting injuries of such severity[6] as to bespeak an intent to achieve that result. Finally, we do not have collateral evidence such as in *Guilford*, *supra*, 228 Cal.App.4th at page 662 of an extensive history of domestic violence with the victim (at least in the portions of the record of conviction to which the People and defendant have directed us) such that intent can be presumed. In short, the actions of defendant are equally consistent with an intent simply to drag the victim along with him (or fend off the protective efforts of the teenager) and an indifference to any resulting injuries. This is perhaps the reason the prosecutor did not choose to contest eligibility, because the requisite intent cannot be established as a matter of law.

The People consequently have failed to establish that defendant was ineligible for resentencing. We now return to the issues defendant has raised in this appeal.

## 2.0 Defendant Was Not Entitled to a Jury Determination of the Issue

Defendant contends that a finding of unreasonable danger to the public is a fact that "increases" the penalty for his crimes, and therefore is subject to a requirement of a jury trial and a standard of proof of beyond a reasonable doubt under *Apprendi v. New Jersey* (2000) 530 U.S. 466 [147 L.Ed.2d 435] and its progeny.

---

[6] It is arguable whether the injury to the girlfriend is akin to the *multitude* of abrasions present in other cases sustaining a finding of great bodily injury (see *People v. Cross* (2006) 45 Cal.4th 58, 64, 66 [injury ordinarily must be severe, more than inherent in offense, or results in pain or need for medical attention]; *People v. Washington* (2012) 210 Cal.App.4th 1042, 1047-1048)), or whether the injury to the teenager—simply a red mark without broken skin or bruising, or any report of lingering pain—crosses the fine line distinguishing great bodily injury from lesser injuries (*Cross*, at p. 64); the People again do not provide any analysis on this point.

13

Defendant's reliance on the principle in the *Apprendi* line of cases is misplaced. As we noted in *People v. Benitez* (2005) 127 Cal.App.4th 1274, 1277-1278, under these cases any fact increasing punishment beyond the statutory maximum authorized on the facts necessarily found in a jury's verdict must itself be the subject of a jury finding, but this does not apply to *facts rendering a defendant ineligible for mitigation* of a punishment that the facts underlying the verdict otherwise authorize.  (Accord, *Elder*, *supra*, 227 Cal.App.4th at p. 1315; *People v. Superior Court* (*Kaulick*) (2013) 215 Cal.App.4th 1279, 1304-1305 (*Kaulick*), citing *Dillon v. United States* (2010) 560 U.S. 817, 828-829 [177 L.Ed.2d 271, 284-286]; cf. *People v. Blakely* (2014) 225 Cal.App.4th 1042, 1060 [determination of eligibility]; *People v. Osuna* (2014) 225 Cal.App.4th 1020, 1039-1040 [same; both cases citing *Kaulick*].)[7]  Consequently, *Apprendi* neither entitles defendant to a jury trial on the issue of unreasonable danger, nor to proof of the issue beyond a reasonable doubt.

**3.0  Other Arguments for Higher Standards of Proof Are Not Persuasive**

The default burden of proof is preponderance of the evidence.  (Evid. Code, § 115.)  Characterizing eligible defendants as "presumptively" entitled to resentencing (in an analogy to a now disapproved interpretation of a sentencing statute providing for the

---

[7]  Like the defendant in *Elder*, the present defendant contends for the first time in his reply brief that *Pepper v. United States* (2011) 562 U.S. 476, ___ [179 L.Ed.2d 196, 214] has declared this exception for mitigation of punishment does not apply to defendant's " 'plenary resentencing proceeding[],' " a category in which he contends section 1170.126 belongs.  He does not give any good cause for failing to cite this existing authority in his opening brief.  This forfeits plenary consideration of it.  (*Sourcecorp, Inc. v. Shill* (2012) 206 Cal.App.4th 1054, 1061, fn. 7; *People v. Baniqued* (2000) 85 Cal.App.4th 13, 29.)  We accordingly confine ourselves to observing that *Pepper* itself twice refers to its application in the situation of a remand for "resentencing after a sentence has been set aside on appeal."  (*Pepper*, *supra*, at p. ___ [179 L.Ed.2d at pp. 213-214].)  That is a manifestly different context than a petition to recall a sentence.  (*Elder*, *supra*, 227 Cal.App.4th at p. 1315, fn. 9.)

14

imposition of a life term without parole on a juvenile defendant (*People v. Gutierrez* (2014) 58 Cal.4th 1354, 1370-1371)), defendant argues he is entitled as a result to proof that he represents an unreasonable danger beyond a reasonable doubt. He argues alternately that due process requires a standard of proof of clear and convincing evidence.

The People assert in passing that the burden of proof is irrelevant where (as here) we review a trial court's ruling for an abuse of discretion. It is true that for purposes of *appellate review* the burden of proof underlying a trial court's exercise of discretion is irrelevant. (*Cal-State Business Products & Services, Inc. v. Ricoh* (1993) 12 Cal.App.4th 1666, 1680 [review of an exercise of discretion does not involve quantum of evidence adduced in support].) But as we recently determined in a dependency case, the application of too stringent a burden of proof for a proponent is a prejudicial abuse of discretion in the presence of disputed evidence (*In re L.S.* (2014) 230 Cal.App.4th 1183, 1194), and the converse would be present here (prejudice to an opponent from imposing too lenient a burden of proof on the proponent).[8]

Defendant's first argument rests on an incorrect premise. An eligible defendant does not have any sort of "presumptive" entitlement to resentencing. Under the statute, it is a mere opportunity for resentencing *if* the defendant does not otherwise present an unreasonable risk of danger. (*Kaulick*, *supra*, 215 Cal.App.4th at pp. 1301-1302.)

Invoking our opinion in *In re Marriage of Peters* (1997) 52 Cal.App.4th 1487, 1490, defendant argues that, even if he is not otherwise entitled to proof of unreasonable danger beyond a reasonable doubt, we should apply this standard as a matter of policy based on the liberty interest at stake, as in cases applying that standard where involuntary

---

**8** We note the recently filed *People v. Payne* (2014) 232 Cal.App.4th 579 (*Payne*) (petn. for review filed Jan. 20, 2015, S223856) has nicely elucidated the interplay between the burden of proof with respect to the *underlying facts* and the review of the trial court's *ruling* for abuse of discretion.

commitments are involved.  Putting aside the distinction between an *initial* involuntary civil commitment and *resentencing* someone already subject to an involuntary criminal commitment based on proof beyond a reasonable doubt, defendant completely ignores the express intent of the electorate enacting the statute that resentencing occur *only* where public safety is not put at risk as a result.  (*People v. White* (2014) 223 Cal.App.4th 512, 522 [noting that electorate "approved a mandate" to "liberally construe[]" statute to *protect* safety of people of California]; *Yearwood*, *supra*, 213 Cal.App.4th at p. 175 [public safety protection is a key purpose of initiative].)  Given this *equally heightened* interest of the electorate in its limitation on its grant of mitigation of punishment, we do not find it appropriate as a matter of policy to impose a greater burden of proof on the People.  (*Kaulick*, *supra*, 215 Cal.App.4th at p. 1305 [unpersuaded that any reason for higher burden of proof exists].)  We therefore reject this argument.

As for his claim that due process requires proof of a "sentencing enhancement" by at least clear and convincing evidence where it represents a substantial increase in penalty beyond that prescribed in the substantive crime, it is based on dictum from *McMillan v. Pennsylvania* (1986) 477 U.S. 79, 88 [91 L.Ed.2d 67, 77] (concluding enhancement does *not* represent "tail" that is wagging "dog of the substantive offense") that does not establish any entitlement to proof by clear and convincing evidence in particular.  Moreover, as we have made clear above, defendant's sentence is *not* being "enhanced" in any respect.  He does not have any *entitlement* to a reduced sentence; he must otherwise qualify for it.  We therefore reject the applicability of this dictum in the present case.

## 4.0  A Finding of Unreasonable Danger Was Not an Abuse of Discretion

We come finally to the home stretch.  Defendant contends the People failed to carry their burden of establishing that he represented an unreasonable risk of danger to the public.

We agree it is the People who bear the burden of establishing that an otherwise eligible defendant presents an unreasonable risk of danger to the public. (*Kaulick*, *supra*, 215 Cal.App.4th at p. 1301 & fn. 25.) However, on appeal defendant's argument must be recast as asserting an abuse of discretion on the part of the trial court in finding him to pose an unreasonable risk of danger. As we will explain, we do not find any abuse of discretion.

### 4.1 Legal Principles

#### 4.1.1 "Unreasonable risk"

The legal criterion guiding the resentencing court's discretion is a curious one (a point neither party directly addresses). It is not enough that a defendant presents a risk of danger to the public; the defendant must present an *unreasonable* risk. (§ 1170.126, subds. (f), (g)(3).)

However, we have recently concluded that this is not impermissibly vague, and does not carry a meaning any different than in any other circumstance in the law where the standard of behavior is that of the reasonable person. (*People v. Garcia* (2014) 230 Cal.App.4th 763, 769.) Thus, as with a review of discretion generally, we must determine in light of the evidence whether a trial court's finding of a risk of danger to the public is one that a reasonable person would not entertain.

#### 4.1.2 Criminal history: Its nature and present relevance are the pertinent criteria

An additional legal principle bears clarification. We agree with defendant that in making its determination of danger to public safety, a history of recidivism *of itself* is an insufficient basis for a court's finding.[9] His criminal history on its face both warranted

---

[9] We think the concurring opinion reads our statement of this principle too broadly. We mean only that the procedure contemplates a *qualitative* approach to criminal history rather than a *quantitative* approach. Thus, it would not be the fact that there are eight prior convictions that of itself warrants denial of relief, it would be that there are eight

17

the original imposition of an indeterminate sentence of 25 years to life, and the denial of relief pursuant to section 1385 because his criminal history was not outside the ambit of a sentencing scheme *designed* to punish recidivists more severely. As defendant suggests, the electorate has created a procedure under which, *notwithstanding* the existence of the criminal history, a defendant can qualify for mitigation of punishment.

Thus, it would frustrate the intent of the electorate if this postsentencing determination rested on a static factor that is immutable, such as the mere existence of prior convictions and violations. This would make the possibility of any relief illusory and, as a result, make the enactment of section 1170.126 pointless: In providing for the admission of evidence dehors the record of conviction, the electorate must have contemplated that evidence of rehabilitation would have some role in the determination (as well as the absence thereof) and cannot simply be disregarded. A present focus on a defendant's character at the time of this postsentencing proceeding has even greater consequence in the context of section 1170.126, because this is a one-shot opportunity to which the electorate gave an expiration date of December 2014 absent good cause (§ 1170.126, subd. (b)), whereas there are subsequent parole determinations.[10]

Therefore, prior or commitment convictions that give rise to a valid concern about a danger to public safety (whether by virtue of their heinousness or multiplicity, or the failure to comply with conditions of intervening periods of probation or parole), *along*

---

convictions for more than minor felonies or for felonies of a violent nature (as here) or the convictions reflect an inability to refrain from reoffending (as here).

[10] As *Payne* noted, there is a *limited* analogy to be drawn between parole determinations and section 1170.126 ("Although we decline to decide how and to what extent parole cases inform [section 1170.126], we do agree with defendant that the proper focus is on whether [a] petitioner *currently* poses an unreasonable risk of danger to public safety.") (*Payne*, *supra*, 232 Cal.App.4th at pp. 601-602.) The concurring opinion elaborates on distinctions. We will reserve judgment on the extent to which it is proper to draw an analogy until the issue presents itself squarely to us.

*with evidence that this concern is presently relevant* (whether by virtue of their temporal proximity to the hearing on the petition or the absence of any evidence of a change in a defendant's character for the better after passage of substantial time), provide a proper basis for a determination that a defendant should be denied relief on the basis of an unreasonable risk of danger to public safety, along with any other relevant evidence.

### 4.1.3 Section 1170.18 is not applicable

Finally, the enactment of section 1170.18 as part of an initiative in the 2014 general election two weeks before oral argument does not have any effect on our review of the trial court's decision.[11] This new provision states that it defines "unreasonable risk of danger to public safety," as "used *throughout this Code*" (italics added), as being the commission of a new violent felony "within the meaning of [section 667, subdivision (e)(2)(C)(iv)]." (§ 1170.18, subd. (c).) The initiative is silent about its application to cases that are not yet final on appeal, such as defendant's.[12]

The Penal Code presumes the prospective effect of any provision added to it unless a *manifest* intent to the contrary appears in extrinsic indicia. (*People v. Brown* (2012) 54 Cal.4th 314, 319 (*Brown*).) *In re Estrada* (1965) 63 Cal.2d 740 established the

---

[11] We solicited supplemental briefing on this issue.

[12] Although defendant asserts in supplemental briefing that we are to afford "liberal construction" to section 1170.18 (Voter Information Guide, Gen. Elec. (Nov. 4, 2014) text of Prop. 47, § 18, p. 74), he does not provide any authority that giving retroactive effect is an implied aspect of "liberal" construction. Nor, for that matter, does the enactment of a procedure (akin to a petition under section 1170.126) for resentencing certain final felony convictions as misdemeanors bespeak a manifest intent to apply this new definition of unreasonable risk to judgments not yet final on appeal (cf. fn. 2, *ante*, p. 2), particularly at the tail end of the period for filing a petition under section 1170.126 (*id*., subd. (b) [Nov. 7, 2014, except for good cause]), when it would not be of any prospective benefit to the vast majority of section 1170.126 petitioners. A more reasonable basis for applying section 1170.18 "throughout" the Penal Code is to have the definition already in place for any *future* ameliorative sentencing procedures.

principle that a reduction in punishment yields an "inevitable" intrinsic inference of retroactive application to all cases not yet final on appeal absent some form of saving clause from which a court can find an intent of prospective application. (*Id*. at pp. 744-745, 747-748.)

However, the *Estrada* principle applies *only* where there is the reduction of a *particular* punishment for a *particular* crime. (*Brown*, *supra*, 54 Cal.4th at pp. 324-325.) As a result, an increase in conduct credits at issue in *Brown*, which was *generally* applicable to all presentence custody (resulting in a *generally* applicable reduction in punishment), did not satisfy the criteria for applying the *Estrada* principle. (*Brown*, at pp. 317-318, 325.)

By a parity of reasoning, even if we assume section 1170.18 results in a constriction on a trial court's discretion to deny a resentencing petition under section 1170.126 that would benefit a defendant (because it would make resentencing to a reduced term more easily available as a result of narrower criteria for denial of relief), this is a statute that generally applies across a class of defendants, and accordingly does not satisfy the restated *Estrada* criteria for applying an inevitable intrinsic inference of retroactive application to cases not final on appeal (and, as a result, we do not need to determine if there is a saving clause preventing the application of this *Estrada* inference).

While defendant contends conduct credits are different than resentencing in his supplemental briefing,[13] this difference does not escape *Brown*'s primary point: A *generally* applicable ameliorative measure is not entitled to the *Estrada* principle. As

---

[13] Defendant is incorrect in asserting that *Brown* did not take punishment into consideration ("We do *not* take issue with the proposition that a convicted prisoner who is released a day early is punished a day less" (*Brown*, *supra*, 54 Cal.4th at p. 325, italics added), or that *Brown* is limited to a holding that it would be irrational to give retrospective effect to an inducement for good behavior (*ibid.*)).

20

nothing else in the enactment of the statute presents any other unambiguous extrinsic indicia of retroactive intent, we apply the Penal Code's default rule of prospective application and disregard section 1170.18.[14]

We disagree with defendant's nascent claim that this will result in a violation of equal protection. *Assuming* that the definition in section 1170.18 applies prospectively to the remaining section 1170.126 petitions not yet adjudicated in the trial court, "not . . . a single case, in this state or any other, . . . recognizes an equal protection violation arising from the timing of the effective date of a statute lessening the punishment for a particular offense," even though an effective date is inherently arbitrary. (*People v. Floyd* (2003) 31 Cal.4th 179, 188.)

4.2  Analysis:  Reasonable Risk of Danger to Public

The resentencing hearing was focused on defendant's criminal history and postcommitment conduct without consideration of any other type of evidence pursuant to section 1170.126, subdivision (g)(3).[15]  Except for a three-year period following discharge from CYA, defendant committed over 20 offenses between 1975 and 1988, including ones that even in the abstract present a danger to the public:  brandishing a weapon, assault, two batteries, and possessing a prohibited weapon.  From 1988 to 1996, he had convictions for the serious or violent offenses of assault with a firearm, shooting at an occupied dwelling, grand theft from the person, and robbery while using a knife (the

---

**14** We have recently reached the same conclusion in the published portion of *People v. Chaney* (2014) 231 Cal.App.4th 1391, 1397-1398 (petn. for review filed Jan. 8, 2015, S223676), a case not yet final.  The People have urged that we follow its reasoning.

**15** Defendant argues the prosecutor *should have* presented evidence under this category of psychological or other evaluations of defendant's future risk of danger, and the trial court (apparently sua sponte) *should have* considered defendant's age as an indicium that he had a reduced risk of recidivism.  Defendant does not present (and we are not aware of) any authority mandating production or consideration sua sponte of a *discretionary* class of evidence the parties otherwise did not find tactically relevant.

21

latter resulting in an uninterrupted period of incarceration until 2004). A year after he finally obtained his discharge from parole in 2007 for the 1997 conviction, his 2008 convictions yet again involved violence against multiple victims. During the 20-year period from 1988 to 2008, when released into the community he committed a new offense or parole violation within three months in 1990, three months in 1991-1992, six months in 1992-1993, nine months in 1996, nine months in 2003-2004, 12 months in 2004-2005, six months in 2006, eight months in 2006-2007, and less than 12 months after his discharge from parole.

Defendant admitted his addiction to alcohol and marijuana fueled much of this behavior, including his 2008 commitment offenses. He has successfully completed institutional treatment programs and improved his vocational prospects, and for the most part his conduct has complied with prison rules. However, achieving these milestones under the structured conditions of a prison environment is not enlightening in assessing the danger presented by a person who, on an ongoing basis, has been unable to avoid reoffending within a short period of time after previous releases;[16] this is especially true without a cogent explanation of why his behavior on release would be any different this time. On this latter point, we note that in his testimony defendant frequently tried to minimize or excuse the nature of his past transgressions rather than take responsibility for them and declare that he was not capable of such acts any longer.

It may be that other jurists might be more inclined to take defendant at his word that he is a changed man. But that is not the test for an abuse of discretion. Particularly where the trial court—already familiar with defendant—had the ability to take his measure at the hearing as one who has learned his lesson at long last, it could properly

---

[16] *Payne* agrees that it is the risk of reoffending in general and not some risk of violent recidivism that suffices to establish the criterion. (*Payne*, *supra*, 232 Cal.App.4th at pp. 603-604.)

conclude that a reasonable person would not entertain the risk of defendant's danger to public safety if his newfound focus on rehabilitation is not sustainable on release to the community.  Accordingly, the finding was not an abuse of discretion.

## DISPOSITION

The order denying resentencing is affirmed.  (***CERTIFIED FOR PUBLICATION***)

                                        _____BUTZ_____, J.


I concur:


_____HULL_____, Acting P. J.

23

MURRAY, J., Concurring.

I write separately because I respectfully disagree with portions of the discussion in part 4.1.2 of the majority opinion, "Criminal history: Its nature and present relevance are the pertinent criteria." (Maj. opn., *ante*, at pp. 17-19.) I view some of the discussion as not supported by the law and unnecessary to explain our conclusion -- the trial court did not abuse its discretion in finding that defendant would pose an unreasonable risk to public safety.

## 1.0 The Electorate's Statutory Language

I begin with the language of the statute: An eligible inmate shall be resentenced unless "the court, *in its discretion*, determines that resentencing the petitioner would pose an unreasonable risk of danger to public safety." (Pen. Code, § 1170.126, subd. (f), italics added.)[1] Subdivision (g) of section 1171.126 sets forth factors a trial court "may" consider in making this determination. "*In exercising its discretion* in subdivision (f), the court *may* consider: [¶] (1) The petitioner's criminal conviction history, including the type of crimes committed, the extent of injury to victims, the length of prior prison commitments, and the remoteness of the crimes; [¶] (2) The petitioner's disciplinary record and record of rehabilitation while incarcerated; and [¶] (3) Any other evidence the court, *within its discretion*, determines to be relevant in deciding whether a new sentence would result in an unreasonable risk of danger to public safety." (§ 1170.126, subd. (g), italics added.)

The electorate's use of the word "may" is important here. "The ordinary import of 'may' is a grant of discretion." (*In re Richard E.* (1978) 21 Cal.3d 349, 354.) This general rule seems particularly applicable here, where the electorate has used the word "discretion" three times in describing the decision to reduce the sentence. (§ 1170.126,

---

[1] Undesignated statutory references are to the Penal Code.

1

subds. (f) and (g).)**²** Thus, the electorate did not mandate the trial court to use any particular factor. To the contrary, not only did the electorate grant trial courts discretion in making the dangerousness determination, but the use of the word "may" and multiple references to the court's "discretion," indicate the intent of the voters to also grant trial courts discretion to decide what factors to consider and the weight to be given to those factors.

## 2.0  Relevance of Criminal History and Rehabilitation

I agree with the majority when they suggest that the "heinousness or multiplicity" of crimes, "the failure to comply with conditions of intervening periods of probation or parole," along with the "temporal proximity" of the commission of the crimes to the

---

**²** As this court has noted, "may" has sometimes been construed to be synonymous with "shall" or "must," and when used in the Penal Code, we must construe the word "may" in context and in pursuance of the legislative purpose, with reference to the entire scheme of law of which it is part so that the whole may be harmonized and retain effectiveness. (*Martinez v. Board of Parole Hearings* (2010) 183 Cal.App.4th 578, 589-590.) Thus, I read "may" in conjunction with the electorate's multiple references to the trial court's "discretion." Regarding the purpose of the law, the Three Strikes Reform Act of 2012 (the Act) was enacted by the voters to save money by reducing the sentences for "non-violent offenses." (Voter Information Guide, Gen. Elec. (Nov. 6, 2012) argument in favor of Prop. 36, p. 52.) However, the protection of the public is also a " 'key purpose' " of the Act. (*People v. Osuna* (2014) 225 Cal.App.4th 1020, 1036; *People v. Blakely* (2014) 225 Cal.App.4th 1042, 1054.) The ballot arguments and section 1 of the Act, in which the findings of the electorate are stated, "expressly distinguished between dangerous criminals who were deserving of life sentences, and petty criminals (such as shoplifters and those convicted of simple drug possession) who posed little or no risk to the public and did not deserve life sentences." (*Osuna*, at p. 1038.) "It is clear the electorate's intent was not to throw open the prison doors to *all* third strike offenders whose current convictions were not for serious or violent felonies, but only to those who were perceived as nondangerous or posing little or no risk to the public." (*Ibid.*) The public safety purpose is further evidenced by the statutory scheme enacted by the voters, which is designed to deny sentence reduction to individuals who present an unreasonable risk to public safety. The word "may" must be read with that purpose in mind. In my view, there is no doubt that the word "may" is used by the electorate in a permissive sense here and the voters would not have anticipated a different construction by the judiciary.

2

section 1170.126 hearing are factors to be considered. (Maj. opn., *ante*, at pp. 18-19.) This is just a restatement of the factor the voters set forth in section 1170.126, subdivision (g)(1) -- courts may consider "petitioner's criminal conviction history, including the type of crimes committed, the extent of injury to victims, the length of prior prison commitments, and the remoteness of the crimes."

However, I disagree with the diminished weight the majority appears to assign to this factor. (Maj. opn., *ante*, at pp. 17-18.) In my view, the majority goes beyond what is required to decide this case by holding that "a history of recidivism *of itself* is an insufficient basis for a court's finding" of unreasonable risk to public safety.[3] (*Id.* at p. 17.) No legal authority or analysis is provided to support this position, and I view it as contrary to the discretion granted trial courts by the electorate -- the discretion to decide what factors to consider and the weight to be given to each of those factors. Based on the plain language and the public safety purpose of the statute, it seems clear that the electorate intended to give trial courts the authority to decide whether an inmate presents

---

[3] The majority says it is in agreement with defendant on this point, but defendant never argued that "a history of recidivism *of itself* is an insufficient basis for a court's finding" of unreasonable risk to public safety. The majority's statement is an extrapolation of defendant's argument that his "three strike record" cannot be the sole basis for denying resentencing. Defendant argued in his opening brief, "The evidence against Crockett's resentencing focused on his past offenses. Under [this] evidence presented by the prosecution to oppose resentencing, Proposition 36 is rendered meaningless because the prosecution always can point to [a] petitioner's *three strike record to oppose a second strike sentence*." (Italics added.) In his reply brief, defendant argued, "Respondent and the court focused on Crockett's recidivism as the primary ground to deny resentencing. Under this approach, any petitioner could be denied resentencing, and the intent of the voters would be forever frustrated. *Crockett's three strike sentence was authorized by law at the time it was imposed. But that is not the question*." I agree with defendant that his "three strike record" cannot be the sole basis for denying resentencing. If the determination of an unreasonable risk of public danger could be made based solely on the existence of the minimum number of strike convictions previously necessary for a third strike sentence, then the recall and resentencing provisions of section 1170.126 would be rendered meaningless. That is a very different argument than contending a defendant's entire history of recidivism is insufficient to establish the danger to public safety.

3

a current unreasonable risk to public safety based solely on the inmate's criminal history, which could include the existence of more than the minimum number of two prior serious or violent felony offenses, the facts underlying those offenses, the existence of and facts underlying non-strike convictions and juvenile adjudications, and defendant's behavior on probation and parole.

The majority says, "it would frustrate the intent of the electorate" if the trial court's determination "rested on a static factor that is immutable, such as the mere existence of prior convictions and violations." (Maj. opn., *ante*, at p. 18.) But I see nothing in the ballot arguments, the language of the statute, or any other relevant source to support this view of the electorate's intent. Nor does the majority cite such sources. Indeed, as I have pointed out, the plain language of the voters indicates quite the opposite.

The majority goes on to say that resting the risk of dangerousness determination on criminal history "would make the possibility of any relief illusory and, as a result, make the enactment of section 1170.126 pointless," because "[i]n providing for the admission of evidence dehors the record of conviction, the electorate must have contemplated that evidence of rehabilitation would have some role in the determination (as well as the absence thereof)." (Maj. opn., *ante*, at p. 18.) But we need not speculate about the "role" the voters "must have contemplated" for evidence of rehabilitation; nor need we ask trial courts to engage in such speculation as they attempt to apply the majority's analysis to future cases. The statute is clear. The express language the electorate chose indicates that rehabilitation is but *one factor* trial courts "*may*" consider. The entire scheme is intended to be " 'flexible enough for the . . . trial court to achieve a just result depending on the facts, law, and equities of the situation.' " (*People v. Flores* (2014) 227 Cal.App.4th 1070, 1075.) In other words, the statutory process for deciding whether a sentence reduction presents an unreasonable risk of danger to public safety is one that has " ' "play in the joints." ' " (*Ibid.*)

4

Consequently, I agree with the People.  The plain language of the statute and the intent of the electorate reflected in that language was to provide the trial court with the discretion to determine an inmate's risk of danger to public safety based on any evidence the court deems relevant.  But more than that, it was the further intent of the voters to grant trial courts discretion to determine the weight to give to that evidence in making the determination.

Concerns about criminal history being a "static" and "immutable" factor are concerns courts have expressed in cases involving the review of parole suitability decisions related to prisoners sentenced to life terms.  But section 1170.126 is a very different provision from the statutes and regulations governing parole suitability for life prisoners.  I will discuss two differences.

First, for life sentences, there is a mandatory minimum amount of prison time that must be served before an inmate can be considered for parole.  Section 1170.126, on the other hand, provides no mandatory minimum number of years that must be served before petitioning for a sentence reduction.

Second, pursuant to statute, the Board " 'shall *normally* set a parole release date' one year prior to the inmate's minimum eligible parole release date . . . .  (§ 3041, subd. (a) . . . .)"  (*In re Lawrence* (2008) 44 Cal.4th 1181, 1202 (*Lawrence*), italics added.)  Thus, the statutory scheme provides defendants who are convicted of crimes carrying life terms with a " 'due process liberty interest in parole' " and " ' "an expectation that they will be granted parole unless the Board finds, in the exercise of its discretion, that they are unsuitable for parole in light of the circumstances specified by statute and by regulation." ' "[4]  (*In re Young*, *supra*, 232 Cal.App.4th at pp. 1435-1436,

---

[4] Another difference between the provisions related to parole suitability and section 1170.126 is the mandatory language of the parole provisions.  Unlike section 1170.126, none of the relevant statutory and regulatory provisions use the word "may."  (See § 3041 & Cal. Code Regs., tit. 15, §§ 2281, 2402.)  The Board and the governor, while having

quoting *Lawrence*, at pp. 1191, 1204.)  Third strike prisoners have the same expectation of parole associated with their life sentences, but their original sentence provided no expectation of a sentence reduction.  Indeed, as the majority has observed, "[a]n eligible defendant does not have any sort of 'presumptive' entitlement to resentencing."  (Maj. opn., *ante*, p. 15; see also *People v. Payne* (2014) 232 Cal.App.4th 579, 598-601.)

As our high court has said, "the *statutory and regulatory mandate to normally grant parole* to life prisoners…means that, *particularly after these prisoners have served their suggested base terms*, the underlying circumstances of the commitment offense alone rarely will provide a valid basis for denying parole when there is strong evidence of rehabilitation and no other evidence of current dangerousness."  (*Lawrence*, *supra*, 44 Cal.4th at p. 1211, italics added.)  Of course, no parole suitability case has addressed the use of criminal history, including the commitment offense, to predict dangerousness concerning a person who is well short of serving the base term.  It is the passage of time during service of the base term that warrants less focus on criminal history and a greater focus on post-conviction factors.  For that reason, parole suitability case law presents a poor analogue to section 1170.126.  In the context of section 1170.126, there is no minimum base term before a prisoner can petition for sentence reduction.  Indeed, the period of time such prisoners might have had to rehabilitate themselves is not uniform; consequently, a grant of broad discretion for trial courts to apply and weigh the factors set forth in section 1170.126, subdivision (g), on a case-by-case basis makes sense and is exactly what was intended by the voters.  Likewise, appellate review of dangerousness

great discretion regarding the parole determination, "*must consider* the statutory factors concerning parole suitability set forth in section 3041 as well as the Board regulations," (*In re Prather* (2010) 50 Cal.4th 238, 251, italics added.)  The relevant Board regulations, promulgated pursuant to legislative mandate, "contain[] numerous factors regarding both an inmate's unsuitability and suitability for parole that the Board [and the governor] *must* consider and rely on to assess whether the inmate poses 'an unreasonable risk of danger to society if released from prison.' " (*In re Young* (2015) 232 Cal.App.4th 1421, 1436.)

determinations by trial courts for abuse of discretion must be done on a case-by-case basis, with an understanding that in some cases, criminal history alone may warrant a finding of current risk to public safety.

The majority's opinion raises questions concerning the "role" of criminal history and rehabilitation and the weight to be given those factors regarding inmates who were sentenced shortly before the passage of the Act. If the "static," "immutable" factor of criminal history is insufficient of itself, then what does that mean for determining the risk of danger of defendants who qualify, but who have little history of rehabilitation because they had been sentenced close in time to the passage of the Act? For such inmates, there will be a limited history of rehabilitation and the inmate's criminal history may be the only factor by which the trial court can perform the function the electorate envisioned -- to ensure that the public is protected. I suppose the lack of rehabilitative programming owing to the relatively short period of incarceration could be viewed as an additional factor, so that criminal history would not be the sole factor considered. But I fear the majority's broad pronouncement that "a history of recidivism *of itself* is an insufficient basis" for a finding of dangerousness will not be read that way.

In any event, I agree with the majority that the trial court did not abuse its discretion. I do note, however, that the trial court focused primarily on defendant's criminal history. I shall set forth the trial court's ruling in detail.

After stating that it had considered the information presented by the parties, the probation officer's report, and the factors set forth in section 1170.126, the trial court congratulated defendant for his programming efforts, but then explained why defendant's criminal history was the basis for its unreasonable risk of danger finding.

"[THE COURT]: . . . . [¶] . . . [Y]ou've done well in prison and I congratulate you for that. I'm pleased to see the programs you've been involved with. [¶] The prison record is one thing the court looks at but it's not the only thing; the court looks also at the criminal conviction history, the type of crimes, the injury -- nature and extent of the

7

injuries to the victims, the lengths of prison commitments and the remoteness of crimes. [¶] So, looking at the totality of everything, I have to tell you that it does appear to me that you constitute an unreasonable risk of danger to public safety. The probation report, in particular, does a thorough job of summarizing your criminal history. It's extensive, it goes on for pages. And in pertinent part, the probation report . . . indicates, and I'll quote from it, 'The defendant has a 40-year history of adjudications and convictions with over half of that time spent incarcerated at the state level. Further, the defendant has failed miserably on previous grants of probation and parole. . . .' [¶] . . . [G]iven the total of your conviction history and the apparent inability to stay free from convictions when you're not incarcerated, gives the court great concern. So, I don't intend to change your sentence pursuant to [section] 1170.126."

The court went on to tell defendant, "I'm sincere when I tell you that I'm impressed by some of the work you've done in prison, by your attitude, by your comments." The court then pointed out that defendant's prison conduct will impact the decision to parole him later saying, "[Y]ou will be eligible for parole eventually, especially if you continue down this path of good conduct. And I encourage you to continue doing that." The court also acknowledged that defendant has a large, supportive family. But then the court said, "given the totality of the circumstances, . . . I elect to exercise my discretion not to resentence on the case."

In my view, the trial court's reasoning was sound, even though it focused on the defendant's criminal history without addressing any shortcomings in defendant's rehabilitation or identifying the specific circumstances to which it was referring when it mentioned "the totality of the circumstances." We could find the court did not abuse its discretion based on defendant's criminal history. However, I also agree with the majority that the record demonstrates shortcomings related to defendant's rehabilitative programming.

8

First, defendant had only served four years on the commitment offense prior to the recall hearing,[5] a relatively short period of time to obtain the rehabilitation required to provide a person with defendant's criminal history with the tools he needs to prevent him from reoffending and, thus, becoming a danger to public safety. Second, I agree with the majority that the apparent institutional remission of defendant's addiction and his institutional treatment was not particularly enlightening for a person who had been unable to avoid reoffending and for whom the addiction admittedly fueled his criminal behavior. Indeed, defendant offered no testimony about what he had learned in his treatment programming or how he planned to use what he had learned to prevent him from relapsing and reoffending.[6] Additionally, like the majority, I note defendant's minimization and the excuses he offered for his criminal behavior at the recall hearing.[7]

---

[5] Defendant was sentenced on February 20, 2009. The recall hearing was held on July 19, 2013.

[6] Defendant contends the prosecution's proof is lacking because it did not present the court with a psychological risk assessment of defendant. I agree with the majority that there is no such requirement. (Maj. opn, *ante*, at p. 21, fn. 15.) Indeed, unlike in the parole context, there is no institutional mechanism in which psychological risk assessments are done for inmates who petition under section 1170.126. (See Cal. Code Regs., tit. 15, § 2240 [psychological risk assessments for life inmates].) In a section 1170.126 setting, the prosecution can meet its burden of showing an unreasonable risk to public safety by whatever evidence it deems necessary. Defendants, on the other hand, are free to produce their own psychological assessments and/or evidence relating to their treatment programming to counter the prosecution's case.

[7] For example, when asked why he would attend AA if released, he said, "Because I know . . . that in my life because I had a hard addiction of drinking and stuff because the family did some wrongs to me, like stole my money all that time when I was on disability; cashing my checks when I got violations. And it kind of hurt me because I knew I needed that money in order to take care of myself on the streets and they'd always take it."

9

"[A] trial court does not abuse its discretion unless its decision is so irrational or arbitrary that no reasonable person could agree with it." (*People v. Carmony* (2004) 33 Cal.4th 367, 377.)  I concur with the majority's conclusion that the trial court here did not abuse its discretion in denying defendant's section 1170.126 petition.


         MURRAY         , J.